DJW/1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**HILLSDALE ENVIRONMENTAL LOSS PREVENTION, INC., et al.,**

**Plaintiffs,**

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al.,**

**Defendants.**

**Civil Action**

**No. 10-2008-CM-DJW**

---

**NATURAL RESOURCES DEFENSE COUNCIL, INC.,**

**Plaintiff,**

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al.,**

**Defendants.**

**Civil Action**

**No. 10-2068-CM-DJW**

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Compel (ECF No. 39) filed by Plaintiffs in these consolidated actions. Plaintiffs move, pursuant to Federal Rule of Civil Procedure 26(b)(5), to compel Defendants United States Army Corps of Engineers and their named officials, Lieutenant General Robert L. Van Antwerp and Colonel Roger A. Wilson, Jr. (collectively "the Corps") to produce and supplement the administrative record with certain documents identified on the Corps' privilege log. Plaintiffs contend that the privilege log contains insufficient information to sustain the Corps' burden to establish that the documents have been properly withheld as either attorney-

client privileged or protected attorney work product. Plaintiffs move the Court for an order (1) ruling that the documents at issue are not privileged or otherwise protected, and (2) directing the Corps to produce the documents and supplement the administrative record with the documents.

The documents at issue are the following five e-mails:[1]

1. January 10, 2007 e-mail from Joshua Marx to Matthew Jeppson and Mark Frazier, subject "Gardner Wetlands";

2. April 3, 2008 e-mail from Joshua Marx to Matthew Jeppson and Mark Frazier, subject "FW: Draft AQ Methodology with EPA Comments and Responses";

3. April 10, 2008 e-mail from Joshua Marx to Matthew Jeppson and Mark Frazier, subject "FW: BNSF Project";

4. April 20, 2008 e-mail from Joshua Marx to Matthew Jeppson and Mark Frazier, subject "BNSF Residential Growth"; and

5. July 29, 2009 e-mail from Joshua Marx to Matthew Jeppson, Mark Frazier, and David Hibbs, subject "RE: Invitation to attend the Intermodal Rail Yard Education Conference in Olathe on August 6."

The Corps contends that these five e-mails are attorney-client privileged. In addition, the Corps contends that the July 29, 2009 e-mail is also protected attorney work product. Each e-mail was identified in the Corps' revised privileged log.

On January 4, 2011, the Court entered an Order (ECF No. 64) taking Plaintiffs' Motion to Compel under advisement. The Order indicated that the information provided in the Corps' revised privilege log and the parties' briefing did not provide the Court with sufficient information to permit the Court to determine whether the five e-mails at issue are attorney-client privileged and whether

[1]In their opening brief, Plaintiffs moved to compel the production and supplementation of *thirteen* specified documents. The Corps subsequently served a revised privilege log that contained more detailed descriptions of the thirteen withheld documents. Plaintiffs stated in their reply brief that, based on the Corps' revised privilege log, they no longer seek the production and supplementation of eight of the thirteen documents. Thus, only five documents remain at issue.

the July 29, 2009 e-mail is protected attorney work product. The Court therefore directed the Corps to submit these five documents to the Court for an *in camera* review.

The Corps has submitted the documents to the Court for *in camera* inspection. The Court is now ready to determine whether the submitted documents are privileged and/or protected work product and whether to order the Corps to produce these documents and supplement the administrative record with them.

## I. Are the Documents Protected by the Attorney-Client Privilege?

### A. Applicable Law Regarding the Attorney-Client Privilege

Because these consolidated cases arise under federal law and jurisdiction is based on 28 U.S.C. § 1331,[2] federal common law provides the rules of decision as to the application of the attorney-client privilege.[3] Under federal common law, the attorney-client privilege exists when the following essential elements are satisfied:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[4])

---

[2]Plaintiffs in these consolidated actions challenge the Corps' issuance of a permit to Burlington Northern Santa Fe Railway Company ("BNSF") under the Clean Water Act for the discharge of dredged or fill material in conjunction with the development of an intermodal transportation facility near Gardner and Edgerton, Kansas. Plaintiffs assert claims under the Clean Water Act, the National Environmental Policy Act and its implementing regulations, and the Administrative Procedure Act.

[3]*See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (where case arises under federal law, federal common law (instead of Kansas law) provides the rules of decision as to the attorney-client privilege) (citing Fed. R. Evid. 501; *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005).

[4]*Id*. (citing *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013, 1998 WL 13244, at *5 (D. Kan. Jan. 6, 1998) (quoting *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 196 (continued...)

The Tenth Circuit Court of Appeals in *In re Qwest Communications, International, Inc*.[5] explained the underpinnings of the privilege as follows:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice. Under the common law, a critical component of the privilege is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.[6]

The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[7] The privilege also protects advice given by the lawyer in the course of representing the client.[8] To be covered by the attorney-client privilege, "the communication between a lawyer and client must relate to legal advice or strategy sought by the client."[9] Communications do not become privileged solely because they involve an attorney.[10] "The focal point of the protection afforded by the attorney-client privilege

---

[4](...continued)
n.4 (D. Kan. 1993)).

[5]450 F.3d 1179 (10th Cir. 2006).

[6]*Id.* at 1185 (internal quotations and citations omitted).

[7]*Sprint,* 258 F.R.D. at 425 (citing *Marten,* 1998 WL 13244, at *6 (quoting *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995)).

[8]*Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981)).

[9]*In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *United States v. Johnston,* 146 F.3d. 785, 794 (10th Cir. 1998)).

[10]*Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (1995) ("[T]he mere fact that an (continued...)

lies with 'communications' between attorneys and their clients."[11] Although the privilege protects disclosure of substantive communication between attorney and client, "it does not protect disclosure of the underlying facts by those who communicated with the attorney."[12] There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication from disclosure, and legal advice must predominate for the communication to be protected.[13] The privilege therefore "does not apply where the legal advice is merely incidental to business advice."[14]

The Tenth Circuit has also recognized that "[b]ecause confidentiality is key to the privilege, the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."[15] Thus, according to the Tenth Circuit, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege

---

[10](...continued)
attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege.").

[11]*Burton v. R. J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997) (citations omitted).

[12]*Sprint*, 258 F.R.D. at 444 (citations and internal quotation marks omitted).

[13]*Id.* (citations and internal quotation marks omitted).

[14]*Id.* (citations omitted).

[15]*Id.* at 426 (internal quotations marks and brackets omitted) (citing *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)).

lest it be waived,"[16] and courts in this Circuit may "grant no greater protection to those who assert the privilege than their own precautions warrant."[17]

It is well established that the party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability.[18] The party "must bear the burden as to specific questions or documents, not by making a blanket claim."[19] In other words, the proponent of the privilege must provide sufficient information to enable the requesting party and the Court to determine whether *each element* of the privilege has been satisfied.[20] Also, the burden of showing that the privilege has not been waived remains with the party claiming the privilege.[21]

Federal Rule of Civil Procedure 26(b)(5) embodies this burden. It provides as follows:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communication, or tangible things

---

[16]*Id*. (quoting *Ryans*, 903 F.3d. at 741 n.13).

[17]*Id.* (quoting *Ryans*, 903 F.3d at 741 n.13).

[18]*In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *Matter of Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 279 (10th Cir. 1983)); *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (citations omitted).

[19]*In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *In re Foster*, 188 F.3d at 1264).

[20]*Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 649 (D. Kan. 2004) (citations omitted).

[21]*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)).

> not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[22]

**B. The Corps Has Not Shown That the Five E-Mails at Issue Are Privileged**

The Court ruled in its January 4, 2011 Order that the Corps' revised privilege log and briefing provided insufficient information to allow the Court to determine whether the five e-mails at issue are protected by the attorney-client privilege.[23] After reviewing the e-mails, the Court is still without sufficient information to determine whether they are privileged. This is true for two reasons. First, the Court is unable to find that the e-mails are communications between the Corps' counsel and the Corps that relate to legal advice or strategy sought by the Corps.[24] As noted above, the proponent of the privilege must demonstrate that there is a connection between "the subject of the communication and the rendering of legal advice."[25] Memos or e-mails such as the ones at issue do not come within the attorney-client privilege merely because they were sent to or by an attorney.[26] Also, the Court is unable to determine that the e-mails have retained the requisite confidentiality because they were distributed to one or more individuals whom the Corps did not identify.

The Court will discuss each of the e-mails at issue in detail below.

---

[22]Fed. R. Civ. P. 26(b)(5)(A).

[23]January 4, 2011 Order (ECF No. 64) at 3.

[24]*In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *United States v. Johnston*, 146 F.3d. 785, 794 (10th Cir. 1998)).

[25]*Sprint*, 258 F.R.D. 421, 443-44 (D. Kan. 2009)

[26]*Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (1995).

*1. January 10, 2007 e-mail*

The January 10, 2007 e-mail was sent by Joshua Marx (the Corps' Regulatory Project Manager) and was addressed to the Corps' attorney, Matthew Jeppson, and to Mark Frazier. The re: line reads: "Gardner Wetlands (UNCLASSIFIED)." The e-mail states that Mr. Marx has reviewed the KCPL Gardner Wetlands file. It then states: "Here is what I discovered and recommend." Mr. Marx's e-mail then provides various factual information about Connelly Ranch, Inc.'s ("Connelly") application for a permit for a commercial development at 135th Street and Metcalf Avenue in Overland Park, Kansas. The e-mail further states that it appears Connelly has completed the commitment it made in its mitigation proposal and that the site has been protected. It further states that, assuming the site continues to be protected, "there should not be a compliance issue." The e-mail makes no request for legal advice, and without further information putting this e-mail in context, it is impossible for the Court to determine that it was sent to the Corps' attorney for the purpose of the Corps seeking legal advice or to assist in the Corps' legal strategy. Moreover, the Court notes that this e-mail was sent January 10, 2007, more than three years before Plaintiffs filed their lawsuits. In short, the Court finds that the Corps has failed to meet its burden to show that this e-mail sought legal advice from the Corps' attorney.

The Court also finds that the Corps has failed to meet its burden to show that this e-mail was made in confidence to the attorney and under circumstances from which it may reasonably be assumed that the communication would remain in confidence.[27] The e-mail was sent not just to the Corps' attorney, but also to a Mark Frazier. Nowhere in the briefing does the Corps identify who Mark Frazier is or in what capacity, if any, he serves the Corps or relates to the facts of this case. Furthermore, the e-mail itself does not provide any information as to who Mr. Frazier is. In short,

---

[27]*See In re Qwest Commc'ns, Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).

it is unknown who Mr. Frazier is and what relationship, if any, he has with Mr. Marx or the Corps' attorney. The Court is thus unable to determine that the confidentiality requirement has been met.[28]

For these reasons, the Court finds that the Corps has failed to meet its burden to show that this e-mail is protected by the attorney-client privilege.

*2. April 3, 2008 e-mail*

The Court also finds that the Corps has failed to meet is burden to show that the April 3, 2008 e-mail is privileged. This e-mail is from Joshua Marx and is addressed to the Corps' attorney Matthew Jeppson and to Mark Frazier. The re: line reads: "Letter on IMF and Logistics P . . .tion-2-15-08-Attachment 1.pdf.; Draft_AQ Methodology_EPA_Comments_Responses.pdf; Kansas City Idle Control Equipment jan 2008_Attachment2.pdf" (ellipsis in original). This is a short e-mail stating that an upcoming meeting "will be to discuss the comments and responses above," i.e., the comments and responses referred to in the re: line.[29] The e-mail further states that "HDR does not

---

[28]*See In re Pearlman*, No. 6-07-BK-00761-ABB, 2008 WL 5210838, at *1-2 (Bankr. M.D. Fla. June 9, 2008) (court unable to determine whether attorney-client privilege applied to attorney's e-mail where proponent failed to identify all parties to whom the e-mail was addressed); *Hurt v. Phila. Housing Auth.*, No. 91-4746, 1994 WL 263714, at *2 (E.D. Pa. June 8, 1994) (court unable to determine whether attorney-client privilege applied to documents where proponent failed to identify all persons on the documents' distribution lists); *Med. Waste Tech. L.L.C. v. Alexian Bros. Med. Ctr., Inc.,* No. 97 C 3805, 1998 WL 387705, at *2 (N.D. Ill. June 24, 1998) (court unable to determine whether attorney-privilege applied to documents where proponent "failed to specify with particularity who exactly the recipients were and what their respective capacities were at the time of distribution."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, No. 88-9752, 1991 WL 231781, at *1 (E.D. Pa. Oct. 31, 1991) (court unable to determine whether attorney-client privilege applied to documents where proponent identified only the attorneys but not the other individuals whose names appeared as senders or recipient of asserted privilege documents). *See also* 2 Paul R. Rice, *Attorney-Client Privilege in the United States* § 11:6 (2d ed. 2009) ("The court will consider the dissemination or distribution of the protected communication as a factor in determining whether [the requisite] confidentiality was maintained. If the document was distributed to third parties, the circle of confidentiality that encompassed the attorney and client will be preserved only if the person who received the document are proven to be agents of either the client or the attorney.").

[29]Although the re: line of this e-mail refers to attachments containing the comments and (continued...)

agree with some of the recommendations that EPA has for the air quality methodologies." Nothing in the e-mail leads the Court to conclude that it was sent to the Corps' attorney for the purpose of seeking legal advice or to assist in the client's legal strategy. In short, without more information, the Court is unable to determine that this element of the privilege has been established.

This April 3, 2008 e-mail, like the January 10, 2007 e-mail discussed above, was sent by Joshua Marx to the Corps' attorney and to the unidentified Mark Frazier. As discussed above, the Corps' failure to identify Mr. Frazier and the capacity, if any, he serves with the Corps makes it impossible for the Court to determine that the confidentiality requirement has been met.

For these reasons, the Court finds that the Corps has failed to meet its burden to show that this e-mail is protected by the attorney-client privilege.

The Court notes that this April 3, 2008 e-mail forwards an April 2, 2008 e-mail from Edward Liebsch, Senior Air Quality Scientist, to Joshua Marx and seven other individuals, including an individual at the EPA and an individual at BNSF. The Corps has not listed this e-mail on its revised privilege log and does not discuss it in its briefing. It is unclear whether the Corps contends that this e-mail is in and of itself privileged or whether it contends that the April 3, 2008 and April 2, 2008 e-mails comprise a *thread* of e-mails and that the *entire thread* should be deemed privileged. The Court rejects either position and declines to find that the privilege applies to the strand or the April 2, 2008 e-mail. In *Universal Service Fund Telephone Billing Practices Litigation*, this Court held that a party is not permitted to identify a *single* e-mail in a privilege log when the party is actually attempting to claim privilege as to a *thread or strand* of e-mails.[30] This Court requires that

---

[29](...continued)
responses, the Corps did not provide any attachments to the Court.

[30]*See Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 672-73 (D. Kan.
(continued...)

each e-mail in a thread or strand be listed on the privilege log.[31] To hold otherwise "would [permit] stealth claims of privilege which, by their very nature, could never be the subject of a meaningful challenge by opposing counsel or actual scrutiny by a judge; this, in turn would render Fed. R. Civ. P. 26(b)(5) a nullity."[32]

Here, the Court holds that by failing to identify this forwarded April 2, 2008 e-mail on its revised privilege log, the Corps has waived any claim of privilege it may have with respect to this document. Even if the Court were to decline to find waiver, the Court would still not find that the forwarded April 2, 2008 e-mail was privileged in and of itself. The Corps' attorney, Matthew Jeppson is neither a sender nor a recipient of this e-mail, and the Corps has not identified any other Corps' attorney on the e-mail. Thus, there is no basis to find that it is even an attorney-client communication.

*3. April 10, 2008 e-mail*

This is an e-mail from Joshua Marx addressed to the Corps' attorney Matthew Jeppson and to Mark Frazier. The re: line reads: "BNSF Project." The e-mail contains one sentence: "FYI, I am not sure exactly what this means for our process." The cryptic nature of this e-mail leaves the Court without sufficient information to determine that it was sent to request legal advice from the Corps' attorney or to assist the attorney in the preparation of any legal strategy. Also, for the same reason discussed above, the Corps's failure to identify the recipient Mark Frazier defeats a finding of confidentiality.

---

[30](...continued)
2005).

[31]*Id.*

[32]*Id*. at 673.

The Court notes that this e-mail forwards another e-mail dated April 10, 2008. The forwarded April 10, 2008 e-mail is from John Knowles (at an "fhwa.dot.gov" e-mail address) to Joshua Marx with copies to Byron Low and James Simerl. This e-mail was not listed on the Corps' privilege log. It is not clear to the Court whether the Corps intends to base its privilege claim in part on this forwarded April 10, 2008 e-mail. Assuming arguendo that the Corps is relying on this forwarded e-mail to make its privilege claim, the Court declines to find that the privilege applies here for the reasons discussed above with respect to the forwarded April 2, 2008 e-mail from Edward Liebsch.

By failing to identify this forwarded April 10, 2008 e-mail on its privilege log, the Corps waived any claim of privilege it may have with respect to this document. Even assuming, arguendo, that the Court did not find waiver, the Court would still not find the e-mail privileged, as the Corps has failed to identify who the sender John Knowles is and who the recipients Byron Low and James Simerl are.

*4. April 20, 2008 e-mail*

This is an e-mail from Joshua Marx to the Corps' attorney Matthew Jeppson and to Mark Frazier. The re: line reads: "BNSF Residential Growth." In this short e-mail, Mr. Marx attaches a link "to an issue in Gardner." The link is to a *Gardner News* article. Mr. Marx states that "[t]his is an issue that will continue to gain momentum in my opinion." He further states: "I am not sure how much HDR is studying this. Council debates intermodal impact at work session."

This e-mail makes no request for legal advice, and without additional information that would put this e-mail in context, it is impossible for the Court to determine that it was sent to the Corps' attorney for the purpose of the Corps seeking legal advice or to assist in the Corps' legal strategy. Also, this e-mail was sent to Mark Frazier, whom the Corps has failed to identify. The Court is thus

unable to determine that the requisite confidentiality was maintained. For these reasons, the Court finds that the Corps has failed to meet its burden to show that this document is protected by the attorney-client privilege.

*5. July 29, 2009 e-mail*

This last e-mail is sent from Joshua Marx to the Corps' attorney, Matthew Jeppson, and to Mark Frazier and David Hibbs. The re: line reads: "Invitation to attend the Intermodal Rail yard Education Conference in [sic] August 6." The e-mail, which is very short, merely states: "Joe did sit in on the meeting and said that it went well. Apparently the [S]ierra [C]lub is not opposed to the project, but they are concerned with a few items—nothing major though." The e-mail attaches a press release about the Intermodal Rail Yard Education Conference.

The Corps fails to provide the Court with sufficient information to determine whether this communication relates to legal advice or strategy sought by the Corps from its attorney. Also, because the Corps fails to identify who the recipients Mark Frazier and David Hibbs are, the Court is unable to determine whether the confidentiality requirement has been met.

The Court notes that this e-mail forwards a string of five e-mails, all of which are dated July 29, 2009. None of these five e-mails is listed on the Corps' revised privilege log. It is not clear whether the Corps is basing its privilege claim in part or in whole on these forwarded e-mails. Assuming, arguendo, that the Corps is relying on these forwarded e-mails to make its privilege claim, the Court declines to find that the privilege applies here. By failing to list these forwarded e-mails on its revised privilege log, the Corps waived any claim of privilege it may have had with respect to them. Even assuming, arguendo, that the Court were to decline to find waiver, the Court would still not find the e-mails privileged, for the following reasons:

*a.* *July 29, 2009, 5:46 a.m. e-mail:*

This e-mail is sent from an e-mail address associated with the Intermodal Railyard Conference and is sent to a number of third parties. It does not show that it was even sent to anyone at the Corps. It is merely an invitation sent to various people to attend the Itnermodal Rail Yard Education Conference. It clearly is not privileged.

*b.* *July 29, 2009 7:57 a.m. e-mail:*

This e-mail is from an individual at the EPA merely forwarding the invitation on. This e-mail does not even reveal who it was forwarded to. Again, this is clearly not privileged.

*c.* *July 29, 2009 8:16 a.m. e-mail*

This e-mail is from the same individual at the EPA to Joshua Marx and a number of individuals at the EPA. It merely states that the EPA will not be attending the conference. Again, this is clearly not privileged.

*d.* *July 29, 2009 8:37 a.m. e-mail*

This e-mail is from Joshua Marx, and is addressed to the Corps' attorney Matthew Jeppson and to Mark Frazier, David Hibbs and two other individuals whom the Corps does not identify. The e-mail merely attaches the press release and indicates that the Corps has not been invited to attend the conference. This e-mail is not privileged because the Corps fails to show that this communication relates to a request for legal advice or that it intended to assist in the preparation of any legal strategy of the Corps. The Corps also fails to identify all of the addresses, which makes it impossible for the Court to determine whether the confidentiality requirement has been met.

*e.* *July 29, 2009 9:04 a.m. e-mail*

This e-mail is from Mark Frazier, whom the Corps has never identified, to Matthew Jeppson, the Corps' Attorney, and to Joshua Marx, the Corps' Regulatory Project Manager. It is also

addressed to David Hibbs, whom the Corps has never identified. This e-mail asks whether it would be advisable to discuss with the EPA's counsel "how various EPA staffers meet with outside groups." The e-mail states that "if random EPA folks are meeting with groups, and maybe not making a distinction between draft and final reports and personal and agency opinions, it could confuse everyone." The Court finds once again that the Corps has failed to show that this e-mail relates to a request for legal advice or that it is intended to assist in the preparation of any legal strategy. Also, because the Corps fails to identify the sender Mark Frazier and the recipient David Hibbs, the Corps has failed to show that the requisite confidentiality was maintained.

*f. July 29, 2009 10:27 a.m. e-mail*

The last in the series of attached e-mails is an e-mail from the Corps' attorney Mark Jeppson to Mark Frazier, Joshua Marx, and David Hibbs. Unlike any of the other e-mails in this thread, this e-mail is marked "Attorney Work Product/Attorney Client Privileged Do Not Copy/Do not Forward/Do Not Release Under FOIA." The re: line reads: "Invitation to attend the Intermodal Rail Yard Education Conference in Olathe on August 6." This e-mail is apparently a response to the previous e-mail which asks whether it would be advisable to discuss with EPA counsel how the EPA staffers meet with outside groups. Mr. Jeppson responds in his e-mail that it might be advisable to have such a discussion "if EPA counsel engage at all in these actions." He further states:

> EPA (like FWS) does this kind of thing all the time. I have spoken to the EPA counsel that advises Joe on related matters, and it wasn't very productive. I think that a discussion with Joe is somewhat more likely to be fruitful, although he seems to have no problem with the idea. Maybe Josh and I can bring it up with him at our next interaction.

As noted above, the attorney-client privilege protects advice given by the lawyer in the course of representing the client.[33] Arguably, this e-mail could be considered advice given by the Corps' attorney in the course of his representing the Corps. Nonetheless, the Court cannot find the communication privileged because the Corps has failed to meet its burden to show the requisite confidentiality because it has failed to identify who Mark Frazier and David Hibbs are. Furthermore, the fact that the e-mail is designated "Attorney-Client Privilege" is of no legal consequence.[34]

### C. Ruling as to the Corps' Privilege Claims

As the party asserting that the e-mails are privileged, the Corps has the burden to provide sufficient information to enable the Court to determine whether each element of the privilege has been satisfied. For the numerous reasons set forth above, the Court holds that the Corps has failed to meet its burden. The Corps is therefore not permitted to withhold from discovery the five e-mails at issue on the basis of attorney-client privilege.

## II. Is the July 29, 2009 E-Mail Protected by the Attorney Work Product Doctrine?

### A. Applicable Law Regarding the Attorney Work Product Doctrine

The work product doctrine, which is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents, things and mental impressions of a party or its representative, particularly its attorney, developed for or in anticipation of litigation or trial.[35] The

---

[33]*Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

[34]*See Ledgin v. Blue Cross and Blue Shield of Kan. City*, 166 F.R.D. 496, 499 (D. Kan. 1996) (A designation on the document that it is privileged "add[s] nothing of consequence to determine whether the document indeed qualifies as work product within the meaning of federal law.").

[35]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) (citing Fed.
(continued...)

asserting party has the burden of establishing work product protection.[36] To carry that burden, the proponent must make a "clear showing" that the asserted objection applies.[37] A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof.[38] It is well settled that the party seeking to invoke work product immunity has the burden to establish all elements of the immunity and that this burden can be met only by an evidentiary showing based on competent evidence.[39]

### B. The Corps Has Not Shown That the July 29, 2009 E-Mail Is Protected by the Attorney Work Product Doctrine

As discussed above in the attorney-client privilege section, this e-mail is sent from a non-attorney, Joshua Marx, to the Corps' attorney and two other individuals. It merely states that an individual from the EPA named "Joe" sat in on a meeting and stated that it went well. It also states that "the [S]ierra [C]lub is not opposed to the project," but they are concerned with a few items.

From the face of this document it is impossible for the Court to determine that it is protected attorney work product. It is not a document created by a Corps' attorney and it certainly reveals no mental impressions or thoughts of an attorney. Also, there is nothing upon which the Court can find that the motivating purpose behind the creation of this e-mail was to prepare for trial in this case. The Court therefore holds that the Corps has failed to meet its burden to show that this e-mail is protected attorney work product.

---

[35](...continued)
R. Civ. P. 26(b)(3)).

[36]*Id.* (citations omitted).

[37]*Id*. (citations omitted).

[38]*Id*. (citations omitted).

[39]*Id*. (citations omitted).

As discussed above, this e-mail forwarded a thread of five e-mails, none of which is listed on the Corps' revised privilege log. Under the rule set forth in *Universal Service Fund Telephone Billing Practices Litigation*,[40] *supra*, the Corps was not permitted to merely identify one of a thread of e-mails with the intention of asserting that all of the e-mails in the thread were privileged. The Court therefore holds that any assertion of attorney work product based on any of the five e-mails in the thread of e-mails was waived.

In sum, the Court holds that the Corps has failed to establish that the July 29, 2009 e-mail is protected from disclosure by the attorney work product doctrine.

**C. Ruling as to the Corps' Attorney Work Product Claim**

As the party asserting that the July 29, 2009 e-mail is protected by the attorney work product doctrine, the Corps has the burden to provide sufficient information to enable the Court to determine whether *each element* of the protection has been met. For the reasons set forth above, the Court concludes that the Corps has failed to meet its burden. The Corps is therefore not permitted to withhold from discovery the July 29, 2009 e-mail on the basis of attorney work product protection.

## III. Conclusion

For the foregoing reasons, the Court holds that the Corps has failed to meet its burden to show that the five e-mails at issue may be withheld on the basis of attorney-client privilege. The Corps has also failed to meet its burden to show that the July 29, 2009 e-mail may be withheld on the basis of attorney work product protection.

The Court therefore directs the Corps to produce these five documents and to supplement the administrative record accordingly. The Corps shall do so within **ten (10) days** from the date of this Order.

---

[40] 232 F.R.D. 669, 672-73 (D. Kan. 2005).

## IV. Expenses and Attorney's Fees

Federal Rule of Civil Procedure 37(a)(5) governs the payment of expenses and attorney's fees in connection with motions to compel. When a motion to compel is granted, as in this case, Rule 37(a)(5)(A) applies. It states:

> If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.[41]

As the Rule expressly provides, the Court may award fees and expenses under Rule (37)(a)(5)(A) only after the Court has afforded the parties an "opportunity to be heard."[42] To satisfy this requirement, the Court directs the Corps to show cause, in a pleading filed with the Court within **twenty (20) days** of the date of this Order, why counsel for the Corps[43] should not be required to pay the reasonable expenses and attorney's fees Plaintiffs incurred in filing their Motion to

---

[41]Fed. R. Civ. P. 37(a)(5)(A).

[42]*Washington v. Houlihan's Restaurants Inc.*, No. 07-2301-JAR-DJW, 2008 WL 1774717, at *1 (D. Kan. Apr. 16, 2008) (citing Fed. R. Civ. P. 37(a)(5)(A)).

[43]Any award of Rule 37 expenses and fees will be imposed against the Corps' counsel, rather than the Corps itself, because there is nothing in the record indicating that the Corps was responsible for the privilege assertions. *See Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 532 n.28 (D. Kan. 2003) (Rule 37 expenses and fees would be imposed against counsel rather than the plaintiffs themselves, where nothing in the record indicated that the plaintiffs were responsible for the erroneous assertion of the attorney-client privilege); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) (Rule 37 sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct).

Compel.[44] Plaintiffs shall have **ten (10) days** thereafter to file a response thereto, if they so choose. In the event the Court determines that expenses and fees should be awarded, the Court will issue a further order detailing the procedures to be followed.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (ECF No. 39) is granted as to the remaining five e-mails at issue.

**IT IS FURTHER ORDERED** that within **ten (10) days** from the date of this Order, the Corps shall produce the five e-mails at issue and shall supplement the administrative record with the e-mails.

**IT IS FURTHER ORDERED** that within **twenty (20) days** of the date of this Order, the Corps shall show cause, in a pleading filed with the Court, why counsel for the Corps should not be required to pay the reasonable expenses and attorney's fees that Plaintiffs incurred in filing their Motion to Compel (ECF No. 39). Plaintiffs shall have **ten (10) days** thereafter to file a response thereto.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 23rd day of March 2011.

s/David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc: All counsel and *pro se* parties

---

[44]The "opportunity to be heard" does not require a hearing, and the Court may consider the issue of expenses and fees "on written submissions." *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 532 (D. Kan. 2003); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000). Because Plaintiffs did not request Rule 37(a)(5) expenses or fees in their motion, there has been no "written submissions" or "opportunity to be heard" on this issue.