## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HILLSDALE ENVIRONMENTAL LOSS PREVENTION, INC; KANSAS NATURAL RESOURCE COUNCIL; CHRIS AXE, SHELLY AXE, and FRANK SAUNDERS, | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 10-CV-2008 CM/DJW |
| v. | ) ) | |
| THE UNITED STATES ARMY CORPS OF ENGINEERS, LIEUTENANT GENERAL ROBERT L. VAN ANTWERP, in his official capacity, COLONEL ROGER A. WILSON, JR., in his official capacity; BNSF RAILWAY COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| *Consolidated with* | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, INC., | ) ) ) | |
| Plaintiff, | ) | Case No. 10-CV-2068 CM/DJW |
| v. | ) ) | |
| THE UNITED STATES ARMY CORPS OF ENGINEERS, LIEUTENANT GENERAL ROBERT L. VAN ANTWERP, in his official capacity, COLONEL ROGER A. WILSON, JR., in his official capacity, | ) ) ) ) ) | |
| Defendants | ) ) | |
| BNSF RAILWAY COMPANY, | ) ) | |
| Defendant-Intervenor. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff National Resources Defense Council ("NRDC") and plaintiffs Hillsdale Environmental Loss Prevention, Kansas Natural Resource Council, Chris Axe, Shelly Axe, and Frank Saunders (collectively, "the Hillsdale plaintiffs") brought this consolidated action against defendants United States Army Corps of Engineers ("the Corps"), Lt. Gen. Robert Van Antwerp, and Col. Roger Wilson, Jr. (collectively, "the Corps defendants"), and BNSF Railway Company ("BNSF"). Plaintiffs alleged that the Corps violated the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*. ("NEPA"); the Clean Water Act, 33 U.S.C. § 1251 *et seq*. ("CWA"); the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. ("APA"); and NEPA implementing regulations, 40 C.F.R. § 1500.1 *et seq*. and 30 C.F.R. § 230.1 *et seq*. (2008), by granting a Section 404 CWA permit to BNSF in connection with the construction and development of an intermodal facility consisting of a railyard and Logistics Park without completing an Environmental Impact Statement ("EIS").[1] The court entered a Memorandum and Order denying plaintiffs' requests for relief on June 28, 2011 ("Memorandum and Order"), and a corresponding judgment on June 29, 2011. Plaintiffs filed a notice of appeal on July 20, 2011. Currently before the court is plaintiffs' Motion for Injunction Pending Appeal (Doc. 95). Plaintiffs request an injunction for the duration of the appeal or, in the alternative, a temporary restraining order for seven days. After reviewing the briefs and applicable law, the court denies plaintiffs' motion as to both requests and determines that an injunction or temporary restraining order of any duration is not appropriate in this case.

I.      ANALYSIS

Federal Rule of Civil Procedure 62(c) allows a court to grant an injunction while an appeal is pending from a final judgment denying an injunction. An injunction is an extraordinary remedy, and the movant's right to relief must be "clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (explaining that because an injunction

---

[1] The relevant facts are included in the court's June 28, 2011 Memorandum and Order and will not be set out again here.

"is an extraordinary remedy, the right to relief must be clear and unequivocal"). Because plaintiffs seek the injunction, plaintiffs must prove the following factors: (1) likelihood of success on the merits, (2) irreparable harm unless the injunction is issued, (3) the balance of the equities tips in plaintiffs' favor, and (4) the injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). In discussing these factors, the parties spent significant briefing discussing the appropriate legal standard and, specifically, the applicability of the "modified" test. (*See* Doc. 95-1 at 11–12, Doc. 97 at 14–17, Doc. 98 at 3–4, and Doc. 99 at 11–13.) Under the modified test, the first factor is somewhat relaxed and the movant need only show "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *RoDa Drilling Co.*, 552 F.3d at 1209 n.3. Importantly, however, this modified test is only available when the moving party has established that the remaining three factors "tip *decidedly*" in the moving party's favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original) (citations omitted). In this case, plaintiffs failed to satisfy the first factor under either standard, which means injunctive relief—even for seven days—is not warranted.[2]

### A. Likelihood of Success on the Merits/Modified Test

Plaintiffs argue they are likely to succeed on appeal because: (1) the Corps failed to perform the necessary alternatives analysis under the CWA, (2) the binding mitigation agreement between BNSF and the Kansas Department of Health and Environment ("KDHE") is inadequate to monitor

---

[2] In *Winter*, the Supreme Court rejected the application of a more lenient "irreparable harm" test because it was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." 555 U.S. at 22. The Court did not specifically address the modified test for the "likelihood of success" factor. Therefore, the Court neither rejected the modified test nor endorsed it. Accordingly, this court is bound by Tenth Circuit precedent, which appears to recognize the continuing validity of the modified test post-*Winter*. *See RoDa Drilling Co.*, 552 F.3d at 1209 n.3 (discussing the modified test); *San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*, 657 F. Supp. 2d 1233, 1239 n.1 (D. Colo. 2009) ("[T]he Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula notwithstanding the *Winter* decision.") (citing *RoDa Drilling Co.*); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1243–44 (D. Colo. 2010) (same).

and mitigate potential particular matter impacts from fugitive dust, and (3) the Corps neither took a "hard look" at the potential impacts of the proposed project on air quality and drinking water, nor deemed the project controversial.  (*See, e.g.*, Doc. 95 at 4; Doc. 97 at 18.)  These arguments were all raised, considered, and rejected by the court in its Memorandum and Order (Doc. 87).

First, the court analyzed the record, the process by which the Corps selected the alternatives analyzed in the Environmental Assessment, and the consideration given to the various alternative sites.  (Doc. 87 at 6–10.)   Based on this analysis, the court determined that the Corps "did not act arbitrarily and capriciously; it meaningfully analyzed reasonable alternatives in concluding that the Gardner site was the least damaging practicable alternative."  (*Id.* at 10.)  Second, the court reviewed the air quality monitoring agreement between BNSF and KDHE in the context of the record as a whole.  The court determined that the measures were sufficient to support the Corps's finding and that the Corps did not act "arbitrarily in making its [Finding of No Significant Impact] merely because of the inherently conditional and flexible nature of the mitigation measures contained in the agreement." (*Id.* at 14–15.)  Third, the court analyzed plaintiffs' arguments and the relevant factors with respect to the potential impacts of the proposed project.  The court rejected plaintiffs' arguments and affirmed the Corps's non-significance determination. (*Id.* at 12–17.)  Because each of the arguments raised by plaintiffs in the current motion was evaluated and rejected in the Memorandum and Order, the court determines that plaintiffs have not demonstrated a likelihood of success on the merits.

Similarly, plaintiffs have not shown "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *RoDa Drilling Co.*, 552 F.3d at 1209 n.3.  Plaintiffs do not contend that the court's decision addressed novel legal issues or questions of first impression.  Instead, this lawsuit raises routine claims under the CWA and NEPA.  The Tenth Circuit has evaluated these types of claims

before, and the questions raised by plaintiffs are not deserving of a more deliberate investigation. *See generally Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007) (setting out standard under APA); *Greater Yellowstone Coal. v. Flowers*, 359 F.3d 1257 (10th Cir. 2004) (affirming district court and considering claims under NEPA and CWA); *Holy Cross Wilderness Fund v. Madigan*, 960 F.2d 1515 (10th Cir. 1992) (reviewing NEPA and CWA claims). Accordingly, plaintiffs have not satisfied the first factor under the more lenient modified test.

### B.  Remaining Factors

Plaintiffs' failure to satisfy the first factor under either standard is sufficient for the court to deny the current relief. The court's decision, however, is further supported by at least two of the remaining injunction factors. First, the balance of the equities does not tip in plaintiffs' favor. Plaintiffs argue that they will be harmed because the tributary to Bull Creek will be destroyed. The court notes, however, that the Corps determined that the project resulted in no significant environmental impact, that the tributary is generally of low quality and essentially dry, and that the project includes mitigation measures. BNSF argues that it has already spent tens of millions of dollars on the project, delay in the Conservation Corridor would force BNSF to halt much of the construction going on throughout the site, and BNSF's general contractor would be forced to "lay off 125 to 150 workers" employed at the site. (Doc. 97 at 29–30 (citing Stevens and Thomas Declarations).) It appears plaintiffs and BNSF will suffer hardship. But, given the above, nothing convincingly suggests that the balance tips in plaintiffs' favor. Accordingly, the court determines that plaintiffs have not satisfied their burden on this factor. *See, e.g.*, *Utah Envtl. Congress v. Troyer*, No. 04-CV-00155-PGC, 2006 U.S. Dist. LEXIS 36608, at *9–10  (D. Utah Jun. 1, 2006) (denying injunction in part because "hardships can be found on both sides of the scale" and "nothing persuasively indicates that the balance tips in favor of an injunction"); *S. Utah Wilderness Alliance v. Office of Surface*

*Mining Reclamation & Enforcement*, No. 07-CV-687-DAK, 2007 U.S. Dist. LEXIS 89617, at *25–29 (D. Utah Dec. 5, 2007) (denying a preliminary injunction in part because the financial harm to the nonmovant "outweighs the potential environmental harm" to movant).

Second, the public interest is served by the proposed project. Plaintiffs argue that the "public interest also favors injunctive relief to allow compliance with federal environmental statutes." (Doc. 95-1 at 18.) The court agrees that compliance with the applicable federal environmental laws is in the public's interest. But the court concluded in its Memorandum and Order that defendants complied with the applicable federal environmental statutes. *See Chem. Weapon Working Grp. v. U.S. Dep't of the Army*, 963 F. Supp. 1083, 1097 (D. Utah 1997) ("There is no general presumption that a NEPA violation will in all cases outweigh other public interests."); *Utah Envtl. Congress*, 2006 U.S. Dist. LEXIS 36608, at *10–11 (determining that the public interest is not served by an injunction in part because the court concluded that the Forest Service complied with the applicable federal laws). In addition, the public interest appears to be served by continued work on—and timely completion of— the project. Based on declarations provided to the court, the project will generate sustainable job growth, energy savings, congestion relief, and other environmental benefits. (Doc. 97 at 31–32 (citing Younger Declaration).) And any delay in completion of the project could result in lost jobs, continued joblessness for prospective employees, and substantial economic losses for the state and local governments. (*Id.* (citing Younger Declaration).) Based on these economic benefits to the public, the court determines that the public interest is best served by denying the injunction. *See Backcountry Against Dumps v. Abbott*, No. 10-CV-1222, 2011 U.S. Dist. LEXIS 90163, at *21 (S.D. Cal. Aug. 12, 2011) ("Maintaining jobs is in the public interest.") These two additional factors support the court's decision to deny injunctive relief and also suggest that the modified test is not appropriate in this case.

II.     CONCLUSION

The court reviewed the briefs and applicable law.   For the above reasons, the court determines that plaintiffs failed to satisfy their burden under either the traditional or modified test.   Accordingly, the court denies Plaintiffs' Motion for Injunction Pending Appeal (Doc. 95) filed with this court in the case now pending on appeal before the United States Court of Appeals for the Tenth Circuit.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Injunction Pending Appeal (Doc. 95) is denied.

Dated this 26th day of August 2011, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**